Peaeson, J.
 

 The doctrine of estoppel has no application. That onty operates between parties and privies, and the estoppel must be mutual. The defendant is a stranger, and cannot be affected by the proceedings, under which the boy was made an apprentice, except to the extent of their operation in fact. So far as they estop, he can neither take benefit nor be prejudiced.
 

 The question in the case is one of construction, because the plaintiff’s right to sue for a harboring between November Tenn, 1848, and February Term, 1849, depends upon his having a title to the services of the bo)r during that time; and whether his title determined at November Term, 1848, or not until the boy actually arrived at the age of twenty-one, depends upon the meaning of the order of Court and the indenture.
 

 it is set out in both as a fact, that the boy, at the time he was bound out, was eighteen years of age; and he is bound as an apprentice until he arrives at the age of twenty-one. Does this
 
 *23
 
 mean until be arrives at the age of twenty-one in fact? or until he arrives at the age of twenty-one, according to the fact that he is now eighteen, which is agreed on by the contracting parties? There can be no question that the latter was the meaning; for why set out the fact that the boy Avas then eighteen, unless for the purpose of fixing the time rvhen he rvould arrive at the age of twenty-one ? and in that way express the extent of the time for which it Avas the intention to bind him ? — that is, for three years.
 

 But it is asked — Suppose it had been set out that the boy-was tAveNe years of age, then, according to this construction he Avas bound for nine years, which Avould make three years beyond the time of his coming at age; — Avould he be bound to serve the last three years? Certainly not; because the County Court had no power to bind him beyond the instant he arrived at the age of twenty-one, and its action Avould have been void as to the excess. But there is an obvious distinction between the case supposed and our case; in that, there is an excess — in this, there is a deficiency; in other Avords, in our case the Court did not bind out the boy for as long a time as they had porver to do.
 
 Non constat,
 
 that for this reason, the master has a right to the services of the boy beyond the time for which he Avas actirally bound. The more rational conclusion is, that as the Court had not, by the first indenture, bound out the boy for as long a time as they had poAver to do, upon the expiration of the first term of service, it Avas the duty of the Court to bind him out again, either to the same or some other master, Avhen it Avas obviously proper to make further stipulations in favor of the boy, in consideration of the further term of service. The question Avas no doubt suggested by the idea of the mutuality of estoppels; but Ave have seen that the doctrine of estoppel has no bearing on the case, and the rights of these parties are not affected by it, one way or the other.
 

 The Statute does not require the Court to ascertain the age of the boy at the time he is bound out, and to insert it in the order and in the indenture; but it aauis found in practice that masters, owing to the influence they had over apprentices, and because the latter Avere not Avell able to assert their rights, very frequently made diem serve after they had arrived at age, because that matter Avas left indefinite, and depended on proof
 
 dehors.
 
 To pre
 
 *24
 
 vent this abuse, the County Courts, to whose special protection the interests of all persons liable to be bound out as apprentices is confided, very properly and almost -universally adopted the practice of agreeing with the intended master beforehand as to the age of the intended apprentice, and having this .fact agreed, set out in the order and also in the indenture. The consequence is, in general, most beneficial. It prevents litigation, and prevents oppression; for, in this way, both sides know when the time is out. It would be a matter of regret, if this Court was obliged to make a decision defeating the object of this most commendable practice; and we are glad to be able to give an opinion by which it is supported. If, in point of fact, the County Court is mistaken as to the age, and it is set out as being eighteen instead of fifteen, the master, at the expiration of the term of sendee agreed on, may enter into new indentures, and have the boy bound to him again for the residue of his minority. If it is set out as being twelve instead of fifteen, the apprentice, when he arrives at the age of twenty-one, may give notice to shew cause why the indenture should not be cancelled, on the ground that the Court had exceeded its authority. This would be the most formal and orderly mode of proceeding; but if the apprentice chose to take the responsibility, he might raise the question by refusing to work.
 

 We are not called on to say how far the action of the Court at February Term, 1849, was effectual, to entitle the plaintiff to the services of the boy from that date; but we think it evident that nothing which the Court did or could have done at that time could have the legal effect, by relation, of entitling the plaintiff to the services of the boy after November, and up to that time; for the term of the first apprenticeship expired by its own limitation at November Term, and a stranger cannot be affected, so as to make him a
 
 tort feasor
 
 by relation: When the defendant hired the boy, the plaintiff was not his master.
 

 Pee Cubjam. Judgment affirmed.